### J. B. LACOSTE v. CHIEF JUSTICE OF BEXAR COUNTY.

In a suit on an administrator's bond against himself and his sureties, admissions made by the administrator, after the administration was closed, though evidence against him, are not evidence against the sureties.

It was competent to prove such admissions as against the administrator himself by his deposition as a witness taken in another suit.

The question of the competency of such evidence as against the sureties is assimilated in the opinion to similar questions arising on former agencies or partnerships, in which cases admissions of an agent or partner, made after the expiration of the agency or the dissolution of the partnership, notwithstanding they may relate to transactions anterior thereto, are not admissible against the principal or copartners. (See the opinion for authorities cited.)

Whenever the declarations of one person are admitted as evidence against another, it is upon the principle, implied by law from the relation of the parties to each other, or to the subject-matter, or to both, that the declarant is, with regard to the subject-matter of the declarations, the agent of the party sought to be affected by them; and when this relation has ceased, the reason of the rule no longer exists, and subsequent declarations are evidence only against the declarant himself.

APPEAL from Bexar. The case was tried before Hon. THOMAS J. DEVINE, one of the district judges.

This suit was brought by the appellee for the use of Amos Nobles, heir at law of Durant Nobles, deceased, against Reuben T. Creigler, administrator *pro tem.* of said deceased, and also against the appellant, Lacoste, and one Hanson Alsbury, sureties of said Creigler, upon his bond as such administrator. The bond was executed on the 19th of October, 1853, under the 27th section of the act. (Paschal's Dig., Art. 1287, Note 474.) The inventory filed exhibited assets consisting of $1,026 in money and some real estate in San Antonio. On the 3d of November, 1853, Creigler was appointed administrator in chief, and on the same day he gave a new bond, with other persons as sureties.

This suit was brought upon the bond for the *pro tem.* administration, the breaches laid being the conversion by

Creigler of assets of the estate to his own use, and his failure to account and pay over to Amos Nobles, adjudged by the probate court to be entitled to the estate, the balance shown by the judgment of that court to be due, and alleged to be $1,000.

On the trial, at the fall term, 1860, the plaintiff offered as evidence the answer made by the defendant, Creigler, to an interrogatory propounded to him in a deposition on file in another suit pending in the District Court, as follows: "Did you expend and dispose of any money belonging to said estate before you were appointed administrator in chief after your arrival from Victoria; if yea, where and how much? I paid on account of my private debts, as well as I recollect, $360." To the admissibility of this evidence the defendants objected, but their objection was overruled, and they excepted.

The court instructed the jury, that "the admissions of Creigler, as to the amount converted to his own use by him, while acting as administrator *pro tem.*, are evidence against himself and his sureties, Lacoste and Alsbury."

There were verdict and judgment against all the defendants for $360 and interest, amounting in all to $537 36.

The defendant, Lacoste, appealed, assigning as errors the admission of the evidence and the instruction to the jury, as above set out.

*Wilcox & Leigh*, for appellant.

No brief for the appellee.

COKE, J.—The only points raised by the assignments of error necessary to be considered arise on the admission in evidence of the statement of the defendant, (in court below,) Creigler, in answer to an interrogatory propounded in another suit, which answer admitted the conversion to his own use of $360 belonging to his intestate's estate during

the *pro tem.* administration, and the charge of the court with reference to that admission, which will be considered together.

So far as the defendant, Creigler himself is concerned, the admission of the testimony is unobjectionable. It is a rule of almost universal application, that the declarations of a party to the record as against such party are admissible in evidence. Statements in a deposition as declarations of the witness under his hand are admissible against him in a suit wherein he is a party, just as any other admissions would be. (1 Greenl. on Ev., § 552.)

But this is a suit on an administration bond against Creigler as principal, and the appellant, Lacoste, and another, as sureties, for a breach of the conditions of that bond, and the statement of Creigler admitted in evidence was made after the expiration of the administration, and not in the course of official duty; and, although admissible against himself, the question arises as to the admissibility of this statement under these circumstances to affect the appellant, his surety on the bond. There is some conflict of decision on this question, but it is believed to be well settled, by the weight of both English and American authorities, that such testimony under the circumstances of this case should not be received for that purpose.

In 1 Phillips on Evidence, 525, it is said to be " a general rule, founded on principles of justice, in regard to the relation of principal and surety, that the surety ought not to be affected by an admission made by his principal, although he may be affected by declarations or statements made by the principal when they are connected with the business in respect of which the surety becomes bound, and are made by the principal at the time of transacting that business."

In 1 Greenleaf on Evidence, § 187, treating of the admissions of a principal as evidence in an action against the surety, it is said: "In the cases on this subject the main

inquiry has been, whether the declarations of the principal were made during the transaction of the business for which the surety was bound, so as to become a part of the *res gestæ.* If so, they have been held admissible, otherwise not.

"The surety is considered as bound only for the actual conduct of the party, and not for what he might say he had done, and therefore is entitled to proof of his conduct by original evidence, when it can be had, excluding all declarations of the principal made subsequent to the act to which they relate, and out of the course of his official duty."

In Smith v. Whittingham, 6 C. & P., 78, where one became surety on a bond conditioned for the faithful conduct of another, as clerk or collector, it was held, in an action on the bond against the surety, that confessions of embezzlement made by the principal after his dismissal were not admissible in evidence.

In Cutler v. Newling, (Manning's Dig., 137,) on the execution of a writ of inquiry on an indemnity bond, an admission by the principal of the amount of damnification was considered by Holroyd, J., inadmissible.

In Douglass v. Howland, 24 Wend., 58, and McKellar v. Bowell, 4 Hawks, 40, the rule recognized in Phillips and Greenleaf on Evidence, quoted above, is referred to and approved. In the former case, it is said to be perfectly well settled, both at Westminster hall and by a majority of the American courts, that the admissions of the principal, when offered to affect the surety and not a part of the *res gestæ,* should be excluded.

In McKellar v. Bowell, 4 Hawks, 40, which was an action against the securities on a guardian's bond, in which the record of a judgment recovered against the guardian in a suit brought against him alone was offered in evidence, it was held, in an elaborate opinion, reviewing both civil and common-law authorities, to be inadmissible. Among other arguments against its admission, it is said:

"If A bind himself to pay for goods sold and delivered to B, the admission of B as to the amount of the goods sold and delivered to him is not admissible in the suit against A. Nor, upon the same principle, could a judgment against B, founded on this admission of the debt, be evidence against A."

It is universally agreed, that the admissions of one partner, during the existence of the partnership, in respect to the business of the firm, are admissible as evidence against his co-partners. Not so as to admissions made after dissolution, although as to business done or facts transpiring before, they are believed to be inadmissible to affect the interests of a co-partner. (Baker v. Stackpole, 9 Cow., 420; Chardon v. Oliphant, Calder & Co., 2 S. C. Constl., 685; White v. Union Insurance Company, 1 Nott & McCord, 556; Walker v. Duberry, 1 Marsh., 189; Story on Part., §§ 323, 324; Speake v. White, 14 Tex., 369.)

It is a well-recognized principle, that when the acts of an agent will bind his principal, then his representations, declarations, and admissions, respecting the subject-matter, will also bind him, if made at the same time, and constituting a part of the *res gestæ;* but that the statements of an agent, to the prejudice of his principal, after his agency has ceased, are mere hearsay, and not admissible. (1 Greenl. on Ev., § 113; Bingham & McCall v. Carr, 21 Tex., 142.)

And this is the underlying principle in all these cases, because, whenever the declarations of one party are admitted as testimony against another, it is, upon the principle implied by law, from the relation of the parties to each other, or to the subject-matter, or both, that the declarant is, in regard to the subject-matter of the admission, the agent of the party sought to be affected. And when this relation has ceased, as in partnership, by a dissolution, or, as in the case under consideration, by expiration of the *pro tem.* administration, for the proper conduct of which

appellant was bound, or, as in the case of a simple agency where it has ceased, the declaration, if made after this, is no longer admissible, because the agency which authorized and gave it force is at an end.

It follows, from what has been said, that the charge of the court to the jury, which was to the effect that Creigler's admissions were evidence against Lacoste and Alsbury, his sureties, was erroneous; and the verdict of the jury being evidently based upon this evidence, and the charge of the court with reference to it, the judgment must be reversed. The court should, by instruction to the jury, have limited the effect of this testimony to Creigler himself; it is clearly legitimate against him, and clearly not so against his sureties.

The record does not contain the inventory filed by Creigler when he was appointed administrator in chief, and we do not know whether, in that inventory, he returned and properly accounted for all the property and money that came into his hands as administrator *pro tem.* Consequently, we will not discuss what effect, if any, it would have on the liability of the sureties on the first bond. if his inventory had shown this, as the point is not raised.

Judgment reversed, and cause remanded for further proceedings.

REVERSED AND REMANDED.