**LEONARD et al. v. CLEBURNE ROLLER MILLS CO. (No. 306-3621.)**

(Commission of Appeals of Texas, Section A. April 5, 1922.)

1. **Partnership** ☞138—**One member has no implied power to make gifts of firm property.**

One member of a partnership has no implied power to make a gift of the firm property, and any attempt on his part to do so will not bind the nonconsenting members, but him only, to the extent of his interest.

2. **Partnership** ☞159 — **Nonconsenting members not charged with notice of acts outside of authority.**

Nonconsenting members are not charged with notice of acts done by a member outside the scope of his actual or apparent authority.

3. **Adverse possession** ☞85(1)—**Presumptions concerning use of master's house by employee.**

There is no presumption of law that one employed by a partnership occupied a house on the property of the partnership as part of the consideration he was to receive for his services, but, if entry was in virtue of such a contract, the presumption obtains, unless rebutted, that possession was in subordination to the title of the partnership.

4. **Adverse possession** ☞60(4)—**Proof required of claimant of partnership property by adverse possession.**

Where employee of partnership entered into possession of a house and lot belonging to the partnership, use of the house constituting a part of consideration for services, to entitle the employee to recover on the theory of adverse possession it is necessary for him to show that at least one member of the firm had actual knowledge of his repudiation of the firm's title, or that, by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim upon his part, the other members of the firm were presumed to have had notice thereof.

5. **Adverse possession** ☞64—**Effect of unauthorized gift of land by a partner.**

If employee of a partnership took possession of a house and lot in virtue of a parol gift from one of the partners, of which the remaining members had no knowledge, yet, if such possession as against the nonconsenting members was an actual and visible appropriation of the property, commenced and continued under such claim of right, inconsistent with and hostile to the claim of the nonconsenting members, for the required length of time, the employee obtained title by adverse possession.

6. **Adverse possession** ☞115(5)—**Question of title by possession held for jury.**

In trespass to try title against one who went into possession of property of a partnership while employed by it, whether he acquired title by adverse possession *held* for the jury.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Cleburne Roller Mills Company against Arthur Leonard and another. From a judgment of the Court of Civil Appeals (229 S. W. 605), reversing a judgment for plaintiff, defendants bring error. Reversed and remanded.

J. M. Moore, of Cleburne, for plaintiffs in error.

J. O. Lockett and H. P. Brown, both of Cleburne, for defendant in error.

SPENCER, P. J. Defendant in error, Cleburne Roller Mills Company, instituted this suit in the ordinary form of trespass to try title to recover of plaintiffs in error the house and lot described in the pleadings.

Defendant in error is entitled to recover title and possession of the property unless defeated by the limitation title asserted by plaintiffs in error. Plaintiffs in error appealed from the action of the district court in giving a peremptory instruction to find for defendant in error. Upon appeal the Court of Civil Appeals concluded that the trial court erred in giving a peremptory instruction in so far as it affected the interest acquired from John Anderson, and hence reversed and remanded the cause. 229 S. W. 605.

The facts briefly are:

That in 1886 a partnership composed of George Anderson, John Anderson, and J. A. Anderson acquired a block of land upon which was erected a flour mill. The lot in controversy was a part of this block, and included in the purchase. Plaintiff in error Mrs. Mary Leonard, is the sister of John and George Anderson, and the aunt of J. A. Anderson.

In a suit in the district court of Johnson county in which J. A. Anderson and the heirs of George and John Anderson, deceased, were parties block No. 4 was decreed to be vested in J. A. Anderson, George Robert Anderson, and Mrs. Elizabeth Anderson. Plaintiffs in error were not parties to that suit. On June 17, 1912, the parties in whom title was vested by this judgment conveyed the property to Anderson Bros. Roller Mills Company, a private corporation. The latter conveyed it

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to Poole, Gresham, and Nail on May 25, 1917, and these grantees conveyed it to defendant in error on June 12, 1917.

There was evidence by plaintiffs in error to the effect that, at the date of the trial of this cause, which was had in February, 1919, they had been residents of Cleburne, Tex., 35 years; that before removing to Texas and while residing in Canada, Mrs. Leonard received several letters from John Anderson, in which he stated that, if she would come to Cleburne, Tex., he would give her a home; that in response to this offer the family came to Texas, and soon thereafter John Anderson took her to the house in controversy, and informed her that it was her home, and that they moved into the house, and continued to occupy the same until the property was sequestered by defendant in error.

During this period of time plaintiff in error Arthur Leonard was employed as engineer at the mill. Defendant in error contended that plaintiffs in error entered and occupied the house during all this period by the permission of the owner, rent free, and as a part of his salary as engineer. Upon this phase of the case Mrs. Leonard testified:

"No; it has never been my understanding that the use of the house we lived in was a part of the consideration of my husband's salary as fireman at the mill. I do not know what understanding my husband had about that, but that was not my understanding. I do not remember the exact date we came here, but it was in January, about 35 years ago. My husband quit working at the mill just a little while before it was sold out to these plaintiffs here. He worked there all the time since we came here up until that time."

Arthur Leonard testified:

"Yes; after I had been here and stayed a few months, and then went back to Canada, John Anderson wrote my wife letters asking us to come to Texas and live, and for me to work at the mill. * * * These letters were written just a little while before we came here to live. I saw these letters myself. No; I had not worked in a flour mill before coming here. I came here to run the engine and fire at the mill. No; he did not tell me that he would furnish me a house to live in if I would come and fire and run the engine; he never said anything to me about furnishing the house as a part of my salary to run the engine. He gave the house to my wife. Of course, I understood that we were to get the house to live in, and when we got here Mr. Anderson took us down and told my wife that was her home."

[1, 2] It may be stated as settled law that one member of a partnership has no implied power to make a gift of the firm property, and any attempt upon his part to do so will not bind the nonconsenting members, but him only, to the extent of his interest. Neither are the nonconsenting members charged with notice of acts done by a member outside the scope of his actual or apparent authority. However, it is the subject of legitimate inquiry in this case as to whether the entry and possession was friendly and in subordination to the true title.

[3, 4] If, as contended by plaintiffs in error, it was no part of the contract between Leonard and John Anderson, acting for the firm, that Leonard was to enter and occupy the house as a part of his salary, then the jury should determine whether the entry and occupancy by them was adverse as to any or all of the members of the firm. Aside from the question of parol gift by John Anderson, the issue is one of contract, and, like any other contract, its terms must be proved. There is no presumption of law that, because he was employed by the firm, he was to occupy and use the house as a part of the consideration he was to receive for his services. A jury might conclude, under all the circumstances, that the entry was in virtue of such a contract, and, if they should so conclude, the presumption obtains, unless rebutted, that such possession was in subordination to the title of the true owner, and, in order to entitle plaintiffs in error to recover, it would be necessary for them to show that at least one member of the firm had actual knowledge of the repudiation of the firm's title or that, by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim upon the part of plaintiffs in error, the other members of the firm will be presumed to have had notice thereof. Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136; Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24; Satterwhite v. Rosser, 61 Tex. 166.

[5, 6] Should the jury find that the entry and possession were not in pursuance of any contract had with the firm, but were in virtue of a parol gift from John Anderson, of which the remaining members had no knowledge, yet, if such possession as against the nonconsenting members was an actual and visible appropriation of the property, commenced and continued under such claim of right, inconsistent with and hostile to the claim of the nonconsenting members, plaintiffs in error would be entitled to recover. These are, however, essentially jury questions; but, in view of another trial, it would be improper to discuss the force or weight of the testimony more than to say that there was sufficient prima facie evidence of the different elements of adverse possession as to all the members of the firm to carry the case to the jury. There was evidence by plaintiffs in error to the effect that they had been in possession continuously for 35 years, during which time they kept the place in repair and placed improvements thereon amounting to approximately $200, and that they built and kept in repair a cow shed, fenced the lot, and papered and painted the house.

We recommend, therefore, that the judg-

ment be reversed and the cause remanded for a new trial consistent with this opinion.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.