## PETTIT v. CAMPBELL et al.

### No. 14179.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 28, 1941.

Rehearing Denied April 11, 1941.

W. E. Allen and Allen & Gambill, all of Fort Worth, and Storey, Sanders,. Sherrill & Armstrong, of Dallas, for appellant.

Boykin & Ray, Simon & Wynn, and H. S. Lattimore, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

This is an appeal from an order overruling a plea of privilege.

The suit was brought in the District Court of Tarrant County by George H. Campbell, receiver of the Harry W. Elliott Interests, and by T. C. McMurray, receiver of the Twelve Way Syndicate Interests, against Charles Pettit and others. Pettit sought to remove the cause to Dallas County, the county of his residence. Plaintiffs filed controverting pleas, seeking to maintain venue in Tarrant County, under Subdivision 4 and Subdivision 7, as amended, of Article 1995, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 1995, subds. 4, 7. Plaintiffs appear to have abandoned their plea under Subdivision 4, and now rely upon Subdivision 7, which, as amended, reads as follows: "7. *Fraud and defalcation.* In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

The plea of privilege was overruled, and the defendant Charles Pettit has appealed.

Plaintiffs' petition, which is incorporated by reference in their controverting plea, in effect alleges: That Harry W. Elliott organized two oil promotions, one known as the Twelve Way Syndicate, and the other as the Harry W. Elliott Interests; that he sold shares in these enterprises to. the public; that these enterprises acquired certain oil properties; that these properties were acquired and held in the name of Elliott, as a sort of agent or trustee for the persons to whom he had sold the shares mentioned; that Elliott, acting as such agent or trustee, made certain transfers of oil and interests in oil to the defendant Pettit, under an agreement that Pettit would share with Elliott individually the profits to be earned by Pettit from these transactions; and that such agreements and acts of Elliott and Pettit constituted a fraud upon the holders of the beneficial interests in these promotion enterprises.

The assignments of error and propositions present questions relating to three matters. The first relates to the admissibility of certain testimony of Mr. Hal S. Lattimore, one of the attorneys for plaintiffs. The other two relate to the sufficiency of the proof to establish that any fraud was committed, or that it was committed in Tarrant County.

It appears from the record that in 1938, before the present suit was filed, Pettit was sued in the United States District Court for the Northern District of Texas upon these same transactions. That suit was dismissed by the trial court, and its action was affirmed by the U. S. Circuit Court of Appeals, for the reasons shown in its opinion. Todd v. Pettit et al., 5 Cir., 108 F.2d 139.

Upon the hearing of this plea of privilege, Hal S. Lattimore, one of the attorneys for plaintiffs, took the witness stand and, over Pettit's objections, testified that he was present when a deposition of Pettit was taken in the above federal court case, and that he heard Pettit make his answers to the interrogatories there propounded to him. Lattimore then proceeded to testify as to what he had heard Pettit testify in the deposition hearing.

Pettit objected on the ground that the deposition taken in the case in the federal court was not admissible because it was taken in a different suit, and also on the ground that if the deposition itself was admissible in evidence, Lattimore's testimony as to what he had heard Pettit testify would not be the best evidence of the testimony appearing in the deposition.

Plaintiffs contended that Pettit's answers given at the deposition hearing were admissible against him in any other suit to which he might be a party, as admissions or declarations against interest, and that any person who had heard him make the

answers could properly testify as to what Pettit had said.

Under such cases as Lacoste v. Chief Justice of Bexar County, 28 Tex. 420, Bilger v. Buchanan, Tex.Sup., 6 S.W. 408, Parker v. Chancellor, 78 Tex. 524, 15 S.W. 157, and National Cattle Loan Company v. Armstrong, Tex.Civ.App., 8 S.W.2d 767, writ of error refused, we would have thought that Pettit's deposition, if properly proved, would have been admissible against him as an admission or declaration against interest. In the case of Reilly v. Buster, 52 S.W.2d 521, the Court of Civil Appeals, citing most of the above cases, held that the deposition of a party, though improperly taken, was admissible against him on the ground that it contained admissions and declarations against interest. But the Commission of Appeals, in an opinion adopted by the Supreme Court, Reilly v. Buster, 125 Tex. 323, 82 S.W.2d 931, reversed the judgment of the Court of Civil Appeals, holding that it was error to admit the deposition in evidence under the circumstances of that case.

Appellees suggest a distinction between the circumstances in Reilly v. Buster, supra, and those in the case on appeal. They suggest that in Reilly v. Buster the Supreme Court only held that it was error to admit the deposition as a deposition, as distinguished from a mere admission or declaration against interest; and that in the case on appeal Pettit's deposition was not offered as a deposition, but only as an admission or declaration against interest. This distinction might be plausible, but for the language in the Reilly v. Buster opinion. The essence of that holding, as we interpret the opinion, is that the answers in a deposition taken by the opposite party are not in the nature of voluntary admissions, but are given under compulsion of law; and further, that since the right of a party to compel the opposite party to testify exists only by virtue of the statutes, the statutes must be complied with, and that to permit some one who was present at the deposition hearing to testify as to what the witness had said, when the deposition itself was not admissible, would be simply an attempt to circumvent the statute.

In arriving at our conclusion that Pettit's deposition was not admissible in evidence, at least unless it was first shown that his deposition was voluntarily taken on his part, we have not been unmindful of the following situation:

In McLean v. Hargrove, 144 S.W.2d 1021, the Texarkana Court of Civil Appeals, basing its holding squarely upon the decision in Reilly v. Buster, supra, held that a deposition of a party, improperly taken, was not admissible, even though offered as an admission and declaration against interest and not as a deposition. The only question discussed in the opinion of the Court of Civil Appeals was the admissibility of the deposition. The Supreme Court, on January 15, 1941, granted a writ of error on the assignment of error complaining of the exclusion of this testimony. After carefully considering the entire situation, we are persuaded that the holding of the Supreme Court, in Reilly v. Buster, rather than the action of the Supreme Court in granting the writ of error in the McLean v. Hargrove case, should govern us in the case on appeal.

But this brings us to another question, that of whether the testimony of Mr. Lattimore was the best evidence of the questions and answers contained in the deposition. Witnesses are generally permitted to testify in a proper case, as to what they may have heard a person testify upon another trial. But we have not been referred to any case where the contents of a written deposition, which the law contemplates be in writing and signed by the witness, have been established by parol testimony, at least until a sufficient predicate had been laid for the introduction of the secondary evidence.

Some of the rules relating to best and secondary evidence may be found in 17 Texas Jurisprudence. At page 471 it is said:

"Primary evidence, or the best evidence, has been defined to be that kind of proof which under any possible circumstances affords the greatest certainty of the fact in question, and all evidence falling short of this, in its degree, is termed secondary. Under some circumstances the best evidence may mean that evidence which is more specific and definite as against that which is merely general and indefinite or descriptive.

"Facts must be proven by the best evidence obtainable, or, in other words, the best evidence of which the case in its nature is susceptible must be produced by

the party upon whom the burden of proving the facts rests. Secondary evidence is admissible only when the best evidence cannot be produced; and where testimony shows upon its face that there is better evidence in existence, secondary evidence should be excluded.

"The rule requiring the best evidence means that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had. It does not demand the greatest amount of evidence which can possibly be given of any fact, and it only excludes such evidence as itself indicates the existence of more original sources of information."

At page 473 it is said: "As a general rule, a written instrument is the best evidence of its contents, and parol evidence is inadmissible to prove the contents unless a proper predicate is laid for the introduction of secondary evidence."

Appellees contend that if Pettit had made the same statements to some person on the street, that person could testify as to what was said, and that for the same reason any one who heard the deposition taken could testify to what he heard Pettit say in answer to the interrogatories. The difference in the two situations is this: In the first case, the testimony of the person to whom the statements were made would be the best evidence available, and in the second, it would not be the best evidence available. No excuse was offered for not producing the deposition of Pettit, or a properly verified copy of it, if the original was not available. Under all of the authorities Pettit would have been entitled to offer any part of the deposition which appellees might not have offered. We would not consider it a wise rule which would permit one of the parties, without notice of any kind, to offer parol testimony as to the contents of a deposition taken in another case, which might not then be available for use by the other party in order to correct any mistakes or omissions of the witness orally testifying as to its contents. We have studied many decisions in addition to those cited in the briefs of the parties, and have not found one where there was even an attempt to prove the contents of a deposition in the manner employed in this case.

What we have said is sufficient to dispose of this appeal, because the proof of the alleged fraud depended upon Mr. Lattimore's testimony, which we hold was improperly admitted.

But even including the testimony of Mr. Lattimore, just referred to, there was not, in our opinion, sufficient proof to show that any fraud was committed.

The case alleged was that Elliott, as trustee for the interest holders, sold certain oil, and transferred certain interests in oil, to Pettit, under an agreement that Pettit would rebate to Elliott, individually and not as trustee, a share of the profits to be earned by Pettit. In other words, that Elliott and Pettit conspired to deal with the trust property in such manner that the trustee Elliott would profit individually from the transactions at the expense of the interest holders.

The record indicates that Elliott held the properties in his own individual name; that he operated them in his own name, and not in the names of the enterprises, nor in his name as trustee, and that the written contracts with Pettit were signed simply in the name of Harry W. Elliott, and not as trustee, nor in the name of either of the enterprises. Pettit's testimony, as related by Lattimore in the manner above described, was to the effect that he bought the oil in question from Elliott, that he took the assignment of overriding interests from Elliott, that he dealt with Elliott, and that he agreed to return a share of the profits to Elliott in order that Elliott might obtain money to pay certain unsecured debts and obtain money for certain expenses. It is to be noted that Pettit's testimony makes no distinction, in referring to the various phases of the transactions, between Elliott as a trustee and Elliott individually. All of his references to Elliott are simply as Elliott, without designating him as a trustee or as an individual. If the rebate was to be given to Elliott in his capacity as a trustee, and if the money rebated was used in the trust enterprises, then no fraud was committed upon the interest holders. There is not a scintilla of evidence that such was not the case. In the absence of any evidence to the contrary, a presumption of legality should attach to the acts of the parties.

In our opinion, the proof offered in this case does not meet the requirements of the rules laid down in Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91.

The judgment of the trial court is therefore reversed, and the case is ordered transferred to the District Court of Dallas County.