## W. P. McLEAN, Jr. v. Mrs. MONNIE HARGROVE.

No. 7823. Decided April 8, 1942.
Rehearing overruled June 10, 1942.
(162 S. W., 2d Series, 954.)

*John E. McLean, McLean & Scott* and *G. C. Johnson,* all of

Fort Worth, and *J. A. Ward,* of Mt. Pleasant, for plaintiff in error.

Statements made in deposition, offered to be proven by party taking same, were offered as declarations against interest, and not as depositions, and when proven on oath by witnesses who heard the statement made, are admissible in evidence as declarations against interest and it was error for the trial court to sustain objections thereto. Edwards v. Norton, 55 Texas 405; Bilger v. Buchanan, 6 S. W. 408; 17 Tex. Jur., 543; McCormack & Ray on Evidence 669; Jones on Evidence (3rd Ed.) 242.

*Seb. F. Caldwell* and *Hiram & Brown,* of Mount Pleasant, and *Phillips & Phillips* and *Nelson Phillips, Jr.,* of Dallas, for defendant in error.

On the proposition that the deposition in question was inadmissible see Reilly v. Buster, 125 Texas 323, 82 S. W. (2d) 931; Parker v. Chancellor, 78 Texas 524, 15 S. W. 157; Pettit v. Campbell, 149 S. W. (2d) 633; Allen v. Gillette, 127 U. S. 589.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

This is a suit by Mrs. Frances McLean Harris against John Hargrove in trespass to try title, wherein John Hargrove answered and made W. P. McLean, Jr., individually and as administrator of the estate of T. R. McLean, deceased, a party to the suit. Upon the death of John Hargrove Mrs. Monnie Hargrove was appointed administratrix of his estate and was granted leave to answer and defend the suit, and to prosecute a cross action for the land in her own right and as administratrix. W. P. McLean, as administrator, answered the cross action filed by Mrs. Monnie Hargrove and filed a cross action. Upon a directed verdict judgment was in favor of Mrs. Monnie Hargrove, individually and as administratrix, which judgment was affirmed by the Court of Civil Appeals at Texarkana. 144 S. W. (2d) 1021. McLean was granted a writ of error.

McLean, upon a material issue made by the pleadings, offered in evidence statements made by John Hargrove as declarations against interest. The statements offered were made by John Hargrove upon a notice that his deposition on oral interrogatories would be taken by Burx Redfern, on July 9, 1936. A precept was issued on that date and a certified copy of the notice was attached thereto and legally served on John

Hargrove on June 25, 1936. On July 9, 1936, John Hargrove, accompanied by his attorney of record, appeared at the time and place in said notice given and John Hargrove orally testified to oral interrogatories and his testimony was taken down in shorthand and reduced to writing by the said Burx Redfern. For some reason not disclosed by the record, the transcript of the questions and answers which had been reduced to writing by Burx Redfern was never signed by John Hargrove, he having died before the trial of the cause. The trial court, evidently acting upon the authority of Reilly v. Buster, 125 Texas 323, 82 S. W. (2d) 931, held that such declarations of Hargrove were not admissible. The Honorable Court of Civil Appeals at Texarkana entertained the same view.

■ The question presented in the Reilly case involved the introduction in evidence of a "so-called ex parte oral deposition," which was offered as "deposition evidence." It was shown that the party taking the same had not given the notice required by the statute and other provisions of the statutes had not been complied with in the attempt to take the deposition. The following expression contained in the opinion discloses the real question to be decided:

"From the foregoing, it is very certain that the so-called ex parte deposition in this instance was no deposition at all and should not have been admitted as such. This being true, could the answers of plaintiff in error be treated as admissions? And, if so, would this cure the error of allowing them to be read to the jury? It seems to us these questions are answered by the mere statement that the answers were not offered merely as admissions, but were offered as deposition testimony given under the solemnity of an oath."

It is true that other language is used in the opinion which seems to condemn such evidence when offered as admissions or declarations against interest. The distinguished jurist writing the opinion recognized this distinction in the use of the following language:

"For this reason, it would seem to be difficult to restrict or limit answers of a party taken under circumstances such as are present here so as to make them admissible merely as admissions, but it is not necessary to decide whether or not they would be inadmissible under all circumstances."

Since the "so-called ex parte deposition" was offered as

"deposition evidence" and not as admissions or declarations against interest, the language of the opinion which condemns the introduction in evidence of such admissions or declarations against interest contained in depositions not taken in strict compliance with the statute, when offered as such, cannot be said to be necessary to the decision of the Reilly case. The court was not called upon to make a decision on that question. Therefore, the opinion expressed is not authoritative on that point. The rule in this court is that "Admissions, declarations or statements made by a person against his interest are admissible against him or those claiming under him * * *." 17 T. J. p. 543, Sec. 224. The rule is applicable where the admissions are contained in a deposition which has been suppressed because of informality of the endorsement on the deposition. Edwards et al v. Norton, 55 Texas 405, in which the court say:

"For a like reason they cannot complain because the court, after having, at their motion, suppressed the depositions of Edwards taken at his own instance, because of informality in the indorsement, allowed plaintiff, after proving the handwriting of Edwards, to read his answers to those depositions, as admissions by him. The objection is, that the admissions of Edwards, made after he had parted with all interest in the subject matter of the suit, were not evidence against them. But Edwards was still a party defendant, and his answers to interrogatories irregularly taken, like any other admission of his, were good evidence against him. Lacoste v. Bexar Co., 28 Texas, 422; 1 Greenleaf on Ev., sec. 552. As the answers were admissible against Edwards, and as the intervenors stood in his shoes, their rights being wholly dependent on his, no injury to them could result."

The rule is applicable although the admissions or declarations are contained in a deposition taken in another suit. Bilger v. Buchanan, (Tex. Sup.) 6 S. W. 408. The court say:

"Objection was made to reading Bilger's depositions in the case between O'Hara and Bonner. The objection amounted to this: that the depositions were not properly taken, as is required in case of depositions given under the statutes. It is not objected that the statements of Bilger were not proven by the testimony of the officer before whom they were made. Bilger's admissions made in those depositions were good testimony against himself. It mattered not that there was no commission, or whether they were made under oath before a proper officer. If they

had been made privately to an individual, they should have been received, if proven by the party in whose presence they were made. They were not so proven; but objection was not made on that ground, and, as against all the objections taken, they were properly admitted." See Parker v. Chancellor et al, 78 Texas 524, 15 S. W. 157; Chaddick v. Haley, 81 Texas 617, 17 S. W. 233; National Cattle Loan Co. v. Armstrong et al, 8 S. W. (2d) 767, (writ of error refused).

It appears, therefore, that the rule has been consistently followed in this court since the decision of the Edwards case in 1881. The rule seems not to have been questioned until the Reilly case. Evidently the lower courts in this case and the Court of Civil Appeals at Fort Worth in the case of Pettit v. Campbell, 149 S. W. (2d) 633, have construed the opinion in the Reilly case to announce a different rule than has been applied in the above noted decision of this Court. In order to set at rest any apparent conflicts in the authorities, we hold that such admissions or declarations against interest, when properly proven, are admissible in evidence, although such evidence may be contained in a deposition not taken strictly in accordance with the statutes. The expression contained in the opinions in the cases of Reilly v. Buster and Pettit v. Campbell, which seem to hold to the contrary, are disapproved.

The judgments of the lower courts are reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Opinion adopted by the Supreme Court April 8, 1942.

### ON MOTION FOR REHEARING.

Mrs. Hargrove, in her motion for rehearing, again assails our ruling on the admissibility of evidence which we discussed in our original opinion and calls our attention to her contention seasonably made in her answer to the application for the writ of error to the effect that the trial court properly directed a verdict in her favor even though there was error in excluding the proferred testimony. She takes the position that, conceding a partnership existed between John Hargrove and Thomas C. McLean (which she vigorously denies) under the evidence in this record title to the land in suit is shown in John Hargrove both by paper title and by adverse possession under the five and ten years statutes of limitation as a matter of law.

We have reconsidered the first question stated and believe that we properly disposed of it in the original opinion.

■ We cannot agree with the second contention. If Hargrove and McLean were partners during the material times in question and acquired the title to this and other lands, upon the death of Thomas C. McLean the title to such property became vested in the surviving partner, John Hargrove. He had the authority and duty to wind up the partnership business and distribute the proceeds to those entitled thereto.

"The surviving partner holds title to the firm assets in trust to wind up the business and account to the decedent's estate or heirs." Akin v. Jefferson, 65 Texas 137.

The estate of the decedent acquires no right in the firm assets, but only a right to an accounting and to the amount of the decedent's interest, if any, in the firm after liquidation and settlement. Ramon v. Ramon, 10 S. W. (2d) 584. In the case before us the sale was made after the partnership, if any, was dissolved by the death of Thomas C. McLean, therefore Hargrove was the sole representative of the partnership estate. He had full authority to sell all or any part of the partnership property for the purpose of paying debts of the firm. His power in this respect is comparable to that of a community survivor.

"Where the partnership has no funds on hand with which to meet existing obligations and the same must either be renewed or the property of the partnership sacrificed through forced sale, the surviving partner, under his power to preserve the estate, is fully authorized to execute necessary renewal of existing indebtedness." Martin v. Dial, 57 S. W. (2d) 75, 89 A. L. R. 571.

■ If there was a partnership its assets consisted of land, including the land in suit and about four hundred acres more situated near by and some twelve hundred dollars cash in bank, with only one partnership indebtedness, which was permitted to be foreclosed on the land here involved. No showing was made that John Hargrove at the time could not have renewed such indebtedness nor is there any showing that he could not have sold other partnership property and paid off the lien and thereby saved the land without a foreclosure proceeding. The land in suit being sold at a foreclosure of a partnership debt

and lien to John Hargrove, the surviving partner, for a consideration of $4,600.00 on the 4th day of December, 1923, when, according to the evidence in this record the land was worth from twelve to sixteen thousand dollars, such purchase would enure to the benefit of the trust estate, burdened with the rights of contribution for the pro rata portion of the purchase price on favor of the person furnishing the purchase money. Under such a state of facts equity creates a constructive trust.

"It is said in the books that trusts of this character are created by a desire of equity to enforce honesty and fair dealing. It is thus raised to prevent fraud or to prevent willful violation of fiduciary relations, or which are actually or constructively fraudulent, and is called a trust 'ex maleficio.' The party perpetrating the fraud is made a trustee 'in invitum,' and the defrauded party the 'cestui que trust.' Miller v. Himebaugh, 153 S. W. 338, (writ refused).

■ Thus John Hargrove held the title to the land in suit as a trustee for the benefit of the partnership, and his possession of the property since 1923 would not become adverse to the heirs of the deceased member of his personal representative until he repudiated the trust. Howard v. Stubblefield, 79 Texas 1, 14 S. W. 1044. Ordinarily the question as to repudiation is one for the jury's determination. Leonard v. Cleburne Roller Mills Co., 239 S. W. 605, (Com. App.).

Mrs. Hargrove relies on the case of Evans v. Carter, 176 S. W. 749. Since the application for writ of error in that case was dismissed by the Supreme Court, it is not necessary to either approve or dissaprove the rulings made therein. It will suffice to quote enough from that opinion to show that it has no application in the present case:

"The evidence in this case tends to show that Evans (the complaining partner) refused to recognize Carter (the purchasing partner) as in any sense his partner, representative or agent, but that he repudiated such relationship. * * * Evans having so treated the relationship, we can see no duty upon Carter other than that one man owes to another. The trust relationship was repudiated by Evans long before the sale and the evidence shows that both parties so recognized the repudiation. * * * Can a partner, or a tenant in common, buy in such title when sold under order of court at public sale, for his

individual use and profit? When he does so, does he hold it in trust for his cotenant or the partnership? * * *."

After concluding that the first question must be answered in the affirmative and the second in the negative, with quotations from the leading case of Starkweather v. Jenner, 216 U. S. 524, 30 Sup. Ct. 382, 54 L. Ed. 602, 17 Am. Cas. 1167, it is further said:

"It appears to us from this record that Evans refused to take resopnsibility or risk and refused to aid in any way in making the property bring the debt. Carter was required to bring the suit, pay the attorney's fees, procure abstracts and the money to discharge the previous lien, which was over $4,000. After all the burden had been so assumed by Carter, Evans demands half of the profit in the land so purchased. We think, since he was unwilling to go into his own pocket to discharge the prior lien or assist in doing so, and the other necessary expenses, and assenting to and showing a willingness that his equity in the land be sold, that he is now in no position to say, when it was sold by order of the court publicity and openly, with full notice to him of the time and place of sale that Carter's purchase should inure to his benefit. By his acts he clearly evidenced a purpose not to purchase the land, or to be in any way responsible in paying the necessary charges and the prior lien thereon."

Neither do we think the rule applicable which is stated in the case of Allen v. Gillette, 127 U. S. 589, 8 Sup. Ct. 1331, 32 L. Ed. 271, to the effect that "The principle that a trustee may purchase the trust property at a judicial sale brought about by a third party which he had not procured and over which he could not have had control, is upheld by numerous decisions of this court and other courts of this country," in which the Supreme Court cited the following Texas cases: Erskine v. De la Baum, 3 Texas 406, The Howards v. Davis, 6 Texas 174, Scott v. Mann, 33 Texas 725, and Goodgame v. Rushing, 35 Texas 722. During the days of the Republic of Texas there was no statute which prohibited a personal representative from purchasing property belonging to the estate of his decedent. Erskine v. De la Baum, 3 Texas 406. Such a purchase is now condemned by statute. Vernon's Annotated Revised Civil Statutes, 1925, Art. 3579. See Fortune et al v. Killebrew, 70 Texas 437, 7 S. W. 759. In any event, the rule stated is not applicable in this case because Hargrove as surviving partner owed the duty to use at least ordinary discre-

tion in preventing the equity belonging to the partnership from being foreclosed and lost.

It must be remembered that our discussion of the law arises upon facts which are raised by the evidence in the record before us and may or may not be found to exist when submitted to a trier of facts, as we have stated the trial court directed a verdict in favor of Mrs. Hargrove.

The motion for rehearing is overruled.

Opinion adopted by the Supreme Court June 10, 1942.