Opinion delivered April 10, 1888

---

No. 6952.

### YOLANDE FORTUNE *v.* WILLIAM KILLEBREW.

1. EXECUTORS—PURCHASER.—It is the duty of an independent executor, when necessary to pay debts which can only be paid by sale of personal property, to sell and liquidate them; failing in this, he can not, even when surety on a claim against the testator on which judgment was rendered during his administration, and land of the estate sold under execution, of which he became the purchaser, assert title to it against the heirs, whether his failure to pay the debts and thus prevent the sale, resulted from a corrupt motive or willful neglect; and this, independent of the fact that he paid an inadequate price. As a trustee, it was his duty to exercise good faith and deal fairly towards the devisees, and to preserve to them their land as far as duty to creditors would permit. See the opinion for facts pleaded with reference to which the above doctrine is announced.

APPEAL from Falls. Tried below before the Hon. Eugene Williams.

*Goodrich & Clarkson,* for the appellant.

*Martin & Dickinson,* for appellee: The fact that a part of the land of the estate of John A. Fortune, Sr., by agreement

among the legatees, with the consent of the executor, had been partitioned among themselves, pending the administration of said estate, could not affect the rights of the creditors of said estate, or the purchaser at execution sale. (Rutherford v. Stamper, 60 Texas, 448.)

Homestead rights can not be acquired in land encumbered by lien at time of its designation as a homestead, as against the lien holder or any one subrogated to his rights. (Jergen v. Schille, 61 Texas, 256; Smith v. Uzzell, 61 Texas, 222; Warhmund v. Merritt, 60 Texas, 24; Dillon v. Kauffman, 58 Texas, 707; Clements v. Lacy, 51 Texas, 160; Brooks v. Young, 60 Texas, 36; Morris v. Geisecke, 60 Texas. 635.)

STAYTON, CHIEF JUSTICE. This action was brought by Yolande Fortune, widow of John A. Fortune, Jr., in her own right and as next friend for the minor children of herself and her deceased husband and by other children of the deceased. The purpose of the action is to establish the right of the plaintiffs to lands sufficiently described in the petition, to which the appellee asserts title. A full statement of the facts on which the rights of the respective parties depend is given in the petition, to which demurrers were sustained and the action dismissed.

The substance of that statement is, that John A. Fortune, Sr., died testate in the year 1862, then seized of an estate amounting in value to more than eighty thousand dollars; that by the terms of his will the defendant became its executor, freed from the control of the probate court, and took possession of the entire estate and so holds the same or its funds until the present time unless he has misapplied it.

The petition further states that at the time of the death of John A. Fortune, Sr., he owned a particular tract of land embracing about two thousand acres, on which there was a balance of purchase money, amounting to about five thousand dollars, unpaid, and that this was the principal indebtness; that subsequent to the death of John A. Fortune, Sr., the devisees under the will, of whom were John A. Fortune, Jr., and the wife of the executor, Killebrew, with the consent of the executor, partitioned this particular tract between themselves, and a part of the tract which was set apart in that partition to John A. Fortune, Jr., is the land now in controversy, on which he made his homestead, and lived until the time of his death.

The devisees under the will of John A. Fortune, Sr., were his widow and children and one grand child, and this partition is alleged to have been made some time after the death of the testator, and among the devisees.

The petition further alleges that John A. Fortune, Sr., owed a debt of one thousand dollars for borrowed money, evidenced by a note on which the defendant Killebrew and C. V. Fortune were sureties, secured by mortgage on other land, which was held by the person to whom the purchase money for the two thousand acres of land was due, and that on this note, and on the purchase money note, a judgment was rendered against the executor in his official capacity for the amount due on the purchase money note as well as upon the note for borrowed money, and on the last named note against Killebrew as surety, and the representative of the other surety who had died, and that this judgment established and foreclosed the liens on the several tracts of land, and directed their sale to pay the debts for which they were severally liable. This judgment is alleged to have been rendered on March 29, 1876.

The land thus directed to be sold to pay the purchase money, which, at the date of the judgment was two thousand five hundred and eighty-nine dollars and forty-four cents, was alleged to be of the value of ten dollars per acre, while that directed to be sold to pay the judgment for two thousand nine hundred and twenty-two dollars and ninety-two cents, for borrowed money, was alleged to be of the value of twenty-two thousand dollars.

The petition further alleges that on August 29, 1879, the land was sold, and that the executor became the purchaser, and subsequently took possession of the land and ejected the plaintiffs therefrom, and now asserts title to it through his purchase; that he bought it at less than one-fourth of its value; that as executor he received assets belonging to the estate of the value of eighty-eight thousand dollars, which were easily convertible into money, which he refused to convert, and allowed interest to accumulate with the fraudulent purpose to buy the land at a low price; that none of the assets of the estate had been used for any purpose of the estate, but were in the hands of the executor or converted to his own use.

It was further alleged that none of the estate was charged with special legacies, but was all subject to the payment of debts, and that therefrom the executor had realized sums of

money more than sufficient to pay all the debts of the estate. As a further reason why the defendant should not be permitted to hold the land under his purchase, it was alleged, in effect, that on November 2, 1874, it was agreed between John A. Fortune, Jr., and the defendant that in consideration the former would convey to the latter eighty-five acres of the land set apart to him in the partition of the particular tract referred to, that the defendant would cancel a debt of one hundred dollars due to him, and would pay off and satisfy any claim creditors of the estate of John A. Fortune, Sr., might have on the land now in controversy, and thus protect him in his title thereto, and that in pursuance of this agreement John A. Fortune, Jr., executed and delivered to the defendant a deed for the eighty-five acres of land, which is made an exhibit to the petition. An exhibit of the estate of John A. Fortune, Sr., which came into the hands of the executor, is attached to the petition, and this shows that the greater part of the estate consisted of personal property.

In support of the ruling of the court sustaining the demurrers and dismissing the suit, it is urged that, as against creditors of the estate of John A. Fortune, Sr., the partition before referred to was in operation; that there was no averment that the executor bought the land with money belonging to the estate of which he was the representative; that if such an agreement as is alleged to have been made by John A. Fortune, Jr., and the executor was made and fully executed by the former, its breach gives no right to the appellants to recover from the executor the land, and only gives to them the right to recover damages for its breach. It is further claimed, if the facts alleged show that the appellants are entitled to the specific land claimed, that the district court has no jurisdiction to enforce this right, and that it should be enforced through the probate court.

If the appellants were seeking a partition of the entire estate of John A. Fortune, Sr., although the estate is administered under a will which freed the executor from the control of the probate court, then, if the will did not distribute the entire estate, or provide means for its partition, the executor would have the right to file his final account and have the estate partitioned in the probate court; but even in such a case the jurisdiction of the county court would not be exclusive. Such a case, however, is not presented, and there can be no pretense worthy

of consideration that the district court had not jurisdiction of the case presented by the pleadings. It is true that the partition of a particular part, or of the whole of the estate of a deceased person, by his heirs or the devisees under his will, could not affect the right of creditors to have it subjected to the payment of their claims; but the rights of creditors are not involved in this case, and, if the averments of the petition be true, there was no necessity to resort to the land in controversy to meet the claims of creditors. The question is: Can the executor, under the facts alleged, be permitted to hold the land?

His right to do so must be denied for several reasons:

First. The executor was a trustee, bound to exercise good faith and deal fairly, and to preserve to the devisees, so far as this could be done without injury to creditors, that part of the estate most beneficial to them. The petition alleges that there was ample personal property easily convertible into money to pay all the debts; and, if this was so, it was the duty of the executor from this to raise funds and pay the debts; and his failure to do this, whether resulting from a corrupt motive or a disregard of the rights of heirs or devisees, would preclude him from now asserting title to the land in controversy, which is shown to have been necessary for the subsistence of one of the devisees and his family, and set apart to be so used under the consent of himself and all the other devisees.

Cases may arise in which an executor, who is surety for his testator, might be permitted to buy property of the estate when sold to pay the debt for which he was surety; but the facts alleged in the petition do not present a case in which any court would be authorized to grant such permission.

Second. The petition, however, goes further, and alleges that the executor had realized funds from the estate, that came into his hands, more than sufficient to pay all claims against it. If this be true, it was his duty to have paid the debts out of the funds so received, and having failed to do so, from whatever motive or cause, he was not in a position to purchase and hold, in his own right, any property of the estate. If he had so received sufficient funds to pay all the debts, and has misapplied or converted them, his position would be no better.

Third. It is alleged that for a valuable consideration paid, he had obligated himself to pay the sum for which the property in controversy would be liable to creditors. If this be true, the

money which he paid for the land was, in effect, paid on a debt which he was personally bound to discharge—paid on his own debt—and for this payment he now seeks to hold the very property which it was the purpose of the agreement to relieve from the liability that he seeks to make the basis of his right.

It is unnecessary to consider the amount that the executor purchased the property for, much less than its value, and to apply the rules applicable to such a purchase when made by a trustee.

We can not conceive any ground, even plausible, on which the demurrers can be sustained under any system of laws intended to preserve the rights of persons and to secure justice between man and man.

The judgment of the court below will be reversed and the cause remanded.

It is so ordered.

*Reversed and remanded.*