### THE DALLAS JOINT STOCK LAND BANK OF DALLAS V. BURL A. FORSYTH.

No. 6948.   Decided November 24, 1937.
Rehearing overruled January 19, 1938.
(109 S. W., 2d Series, 1046.)

*Renfro & McCombs* and *James A. Kilgore,* all of Dallas, for plaintiff in error.

The probate court having approved certain claims, allowed by the guardian, and, upon application of the guardian, granted an order authorizing him to mortgage minor's estate to satisfy these claims, and having confirmed a note and deed of trust to secure same, the bank making the loan was not charged with any notice of fraud, and said orders of the probate court, being final orders of a court of general jurisdiction, are not subject to collateral attack in any court of either law or equity. McGrady v. Clary, 247 S. W. 1099; R. S. 1925, Arts. 4102, 4195, 4211.

*P. C. Fewell* and *Olin E. Nesmith,* both of Dallas, for defendant in error.

The orders of the probate court being contrary to the statutes, and not authorized thereby, and having been obtained by fraud of which the bank had no notice, were subject to collateral attack to remove cloud from title. Cline v. Noblo, 117 Texas 474, 8 S. W. (2d) 633; Bonner v. Pearson, 7 S. W. (2d) 930; Greathouse v. Fort Worth & D. C. Ry. Co., 65 S. W. (2d) 763.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

The parties will carry here their trial court designation.

The Dallas Court of Civil Appeals reversed and remanded a trial court judgment in favor of plaintiff against defendant and others. See 81 S. W. (2d) 1103. We copy here sufficient of the opinion of that court to show the controlling facts.

"The Dallas Joint Stock Land Bank of Dallas instituted this suit in a district court of Dallas County to recover the balance due on a promissory note and to foreclose a deed of trust lien against 478 acres of land in Denton County, Texas. The petition alleges that the note and deed of trust had been executed, along with the other defendants, by James W. Forsyth, as guardian of Burl A. Forsyth, the appellant, and Robert T. Forsyth, as administrator with will annexed of the estate of J. A. Forsyth, under proper orders of the probate court of Dallas County. All parties who had signed the note, deed of trust, and who had an interest in the land were made parties to the suit and served with citation. All except the appellant permitted judgment to go against them by default.

"The appellant, whose guardian had signed the note and deed of trust, had attained his majority prior to the institution of the suit, filed answer, setting up that he was the owner in fee of one-half undivided interest in the real estate involved; that he was not indebted to the plaintiff, had not executed any written instrument promising to pay the debt sued on or to convey any right he had in the land; that, if James W. Forsyth, as guardian of his estate, executed any promissory note, or any instrument attempting to grant, sell, convey or mortgage the real estate described in plaintiff's petition, by which the guardian attempted to bind his ward or to convey his ward's interest in the land, in trust for the payment of such debt, they were attended by such fraud as to ineffectually create an obligation or lien on his estate.

"The facts as stated in appellant's defense may be analyzed as follows:

"On the 5th day of August, 1925, the will of one J. A. Forsyth was admitted to probate by the probate court of Dallas County, under the terms of which he devised the property involved in this suit and made provisions for the payment of his debts.

"The essential paragraphs of the will are as follows:

" 'First: I desire and direct that my body be buried in a decent and Christian like manner, suitable to my circumstances and condition in life.

" 'Second: I desire and direct that all of my just debts and funeral expenses shall be paid by my executrix hereinafter named out of *my estate* as soon as practicable after my death.

" 'Third: I give and bequeath to my daughter, Anna Ellis, wife of Fred Ellis, Five Dollars and no more. The same to be paid by my Executrix hereinafter appointed.

" 'Fourth: After the payment of all my just debts and funeral expenses and the special bequest mentioned in the third para-

graph hereof, I give and bequeath to my sons, James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, in equal portions, 117½ acres of land situated in Collin County, Texas, the same being out of the George B. Pilant Survey, on the waters of Wilson Creek about 3½ miles South East from the City of McKinney. Also 80 acres of land situated in————————County, New Mexico. Also two shares of stock formerly known as Texas Traction Company stock, but now known as Texas Electric Railway stock. To have and to hold unto them the said James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, their heirs and assigns, forever, in fee simple, to use and enjoy, sell and convey in any way they see fit absolutely and unconditionally.

" 'Fifth: I give and bequeath to my wife, Lou Ida Forsyth, during her natural life or so long as she remains my widow all of my land situated in Denton County, Texas, the first tract being fully set out and described in deed from A. W. Robinson to J. A. Forsyth and Hatton Andrews bearing date March 27th, 1903, and recorded in Book 87, Page 585, of Deed Records for Denton County, Texas, the second tract being fully set out and described in a deed from N. H. Rector and wife to Forsyth & Andrews bearing date May 11, 1903, and recorded in Book 86, Page 282, of Deed Records for Denton County, Texas, the third tract fully set out and described in a deed from W. M. England and wife to J. A. Forsyth bearing date January 18, 1907, and recorded in Book 101, Page 203, of Deed Records for Denton County, Texas. The fourth tract is fully set out and described in a deed from M. L. Stover, et al. to J. A. Forsyth bearing date April 30, 1914 and recorded in Book 138, Page 305, Deed of Records for Denton County, Texas. Said four tracts of land aggregating about 465 acres, to live upon, use, occupy and enjoy as her home. I also give and bequeath to my wife the said Lou Ida Forsyth, Fifty head of cattle, one horse and buggy, four span of work mules, and all farming utensils necessary for operating said farm; and she shall also have a sufficient number of hogs for her maintenance and support from year to year during her widowhood or natural life. And out of the revenue arising from the operation of said farm said wife is to maintain and educate my son, Burl A. Forsyth. To have and to hold unto her said Lou Ida Forsyth, during her natural life time or so long as she remains my widow, the above described property. Should my wife, the said Lou Ida Forsyth, marry again then all of said property hereinabove mentioned, whether the same be real, personal or mixed shall pass to and vest absolutely to my children hereinafter named.

" 'Sixth: It is my will and desire and I here now so direct

that upon the death of my said wife or at the time she ceases to remain my widow, that the title to the property bequeathed in the Fifth paragraph of this Will, shall pass to my children as follows: My son, Burl A. Forsyth, shall take absolute title to one-half of said property, to use and enjoy the same unto him and his heirs and assigns forever, in fee simple. My sons, James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, shall take the absolute title in equal portions, to use and enjoy the same unto them, their heirs and assigns forever, in fee simple, to the other half of said property.

" 'Seventh: It is my will and desire and I so direct that should any cattle or work stock of any description of which I may die seized and possessed remain other than that specifically set out hereinabove in paragraph fifth be sold, and the proceeds arising from the sale of said personal property be applied to the payment of any debts or debt with which my estate may be properly chargeable, and that the remainder, if any, pass to and vest in my children hereinabove designated in paragraph sixth in the same proportion.

" 'Eighth: I hereby constitute and appoint my wife, Lou Ida Forsyth, Executrix of this my last Will and Testament, and direct that no bond or security be required of her as such. And it is my will and desire and I do so direct that no other action shall be had in the County Court or in any other Court in the administration of my estate than to prove and record this Will, and return an inventory and appraisement of my estate and list of claims.'

"The named executrix, Lou Ida Forsyth, declined to act as executrix under the will and elected against the will, and on August 5, 1925, Robert T. Forsyth, a devisee under the will, offered the will for probate and was appointed administrator with the will annexed, and soon thereafter James W. Forsyth, another devisee, was appointed guardian of the estate of Burl A. Forsyth, then a minor 15 years of age. On March 19, 1927, the guardian made application to the probate court for approval of a pro rata allowance claim alleged to be due and owing to the adminstrator, reciting therein that the minor and his estate of inheritance under the will of J. A. Forsyth was indebted to the estate of J. A. Forsyth in the sum of $2,579.40, and further reciting that 'the amount was estimated and agreed upon by James W. Forsyth, guardian, and Robert T. Forsyth, administrator, subject to a hearing and proof thereon by the Probate Court,' and being one-third of a claimed indebtedness of J. A. Forsyth, deceased, due to various parties in sundry amounts. The application recited that such debts were directed to be paid

by the terms of the will of J. A. Forsyth before a distribution of his property.

"Appellant further contended that the inventory of all claims due and owing by the estate of J. A. Forsyth, deceased, appearing of record in the adminstration proceedings, did not include any of the items set out in the guardian's pro rata allowance claim, had never received the sanction of the probate court of Dallas County as a claim against the estate of J. A. Forsyth, and was fraudulently asserted as an indebtedness due by the minor and his estate of inheritance; and, further, that the probate court's approval of the pro rata allowance claim in the sum of $2,579.40 against the minor's estate is a void order, one not authorized under the terms of the will, and is based on fraudulent deception of the administrator and the guardian, in order to relieve themselves and their estates of inheritance debts which were chargeable to them and their gifts under the will of J. A. Forsyth.

\* \* \*

"At the conclusion of appellee's testimony, the court declined to permit the appellant to introduce evidence of his defense on the theory that such was a collateral attack on the orders and judgments of the probate court. Subsequently, the court peremptorily instructed the jury to return a verdict in favor of the plaintiff, and rendered judgment against appellant and all the makers of the note for the sum of $5,912, balance due on the principal, interest, and attorney's fee, together with 8 per cent. interest per annum from the date of the judgment, and with a foreclosure of the deed of trust lien on the entire tract of land. This appeal is perfected by Burl A. Forsyth alone. \* \* \*."

The substance of that court's holding was:

(1) That a valid claim "is one of the prerequisites for the exercise of the jurisdiction of the probate court to entertain such application and to encumber the ward's property."

(2) That the defense relied on here was not a collateral attack upon the probate judgment which approved the loan in question.

(3) That the quoted will required that the debts of the estate of J. A. Forsyth, deceased, be paid out of the personal property and the property devised to the half brothers of defendant.

To prove the defense pleaded defendant offered many certified copies of the papers and proceedings, all prior in date to the ones in question, in both the guardianship and administra-

tion cases already referred to. These were rejected and for this action this case was reversed.

We copy a part of one of these as sufficiently typical of the evidence held admissible by the Court of Civil Appeals but rejected by the trial court.

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause on the twenty-fourth day of March, 1933 the following proceeding occurred. Upon said trial the defendant, Burl A. Forsyth, offered in evidence the original Inventory and Appraisement of the Estate of J. A. Forsyth, deceased, said Inventory and Appraisement being as follows:

REAL ESTATE.

\*   \*   \*

SUMMARY

| | |
|---|---|
| About 465 acres in Denton County @ $35.00 . . | $16712.50 |
| About 117½ acres in Collin County @ $100.00 . | $11750.00 |
| 4 houses and lots in Dallas . . . . . . . . . . . . . . . | $13500.00 |
| About 80 acres in New Mexico . . . . . . . . . . | $ 80.00 |
| | |
| Total | $42,042.50" |

\*   \*   \*

"LIST OF CLAIMS

| | |
|---|---|
| Note and deed of trust against Collin County land | $8,000.00 |
| " " " " " " Dallas County property | $2750.00 |
| Personal note in favor of First National Bank of McKinney | 900.00 |
| Personal note due bank at Lewisville . . . . . . . | 1000.00 |
| Funeral bill, burial, etc. . . . . . . . . . . . . . . . | 450.00 |
| Physicians bill . . . . . . . . . . . . . . . . . . . . . | 44.00 |
| Baxter Lumber Company bill . . . . . . . . . . . | 7.25 |
| | |
| \*   \*   \* | $13,151.25 |

GRAND SUMMARY

| | |
|---|---|
| Lands itemized as above . . . . . . . . . . . . .. . . . | $28,542.50 |
| Houses and lots itemized as above . . . . . . . . | $13,500.00 |
| Personal property itemized as above . . . . . . | $ 1,468.00 |
| Claims against estate . . . . . . . $13,151.25." | |

Defendant offered no evidence that plaintiff had any actual notice of these matters. The only notice plaintiff could have had would have been such as it had by reason of the presence of facts in its line of title that put it upon inquiry, or such as the law visited upon it by reason of the presence of these as part

of said proceedings. We say this without deciding whether or not the doctrine of constructive notice applies. This evidence of itself and alone did not raise any issue of notice of the fraud alleged, even if plaintiff actually knew of this instrument and its contents. This because plaintiff must have had notice of the contingency which made the claim a nullity, and no evidence was offered as to this, as indicated hereafter. The instrument quoted, instead of giving such notice, showed the presence of a large indebtedness against the Forsyth estate, thus evidencing on its face the very contingency which might have made the claim valid, conceding the correctness of the opinion of the Court of Civil Appeals.

■■ That the probate court had the power to enter an order approving a loan of the kind in question we think is plain. The Court of Civil Appeals impliedly so held, but in effect said that this latent power was not called into being and made active because a valid claim was not filed. This we think depends on whether we are able to say that the claim filed was utterly void—that is, one the probate court under no facts could approve as a valid claim. If the court had no power to hear and determine its validity, then its judgment was a nullity, void then and forever thereafter, subjecting it to a collateral attack. Conversely, if that court had a right of decision in the matter, its judgment, though erroneous, is not void. In the latter case, the statute amply provides for relief against it by direct attack. The probate court, acting within its constitutional and statutory powers, is a court of general jurisdiction and when so acting its judgments are as immune from collateral attack as are those of the district court when acting within the powers conferred on it by law.

■ It need hardly be stated that one district court will not go behind the judgment of another district court to inquire into the validity of a claim, which, presumptively, has already been heard and decided. The opinion in question proceeds mainly upon the hypothesis that there was an attempt made to fasten in part the debts of the J. A. Forsyth estate upon the land of defendant contrary to the terms of the J. A. Forsyth will, and this made the claim invalid. The will by its second paragraph provides in pointed language for the payment of all "my just debts * * * out of my estate." This would seem to indicate a dominant intention to make all his estate liable for his debts, contrary to the interpretation above noted. Be that as it may, all his estate was liable for the payment of his debts, if such was necessary. While he could legally direct the payment of his debts

out of particular property, he could not, after the exhaustion of such property without their complete payment, prevent the collection of the balance out of the remaining property. So here, conceding the property in question was not liable for his debts until the personal property and the real estate described in the fourth clause of his will had been sold and applied, how do we know that very contingency had not happened when the order in question was made? Stated otherwise, a contingency could have existed that would have made the claim a valid one, admitting all the Court of Civil Appeals held to be correct. The claim therefore being one that could have been supported by proof that made it valid, what right has a district court to go back of the judgment and again litigate what is conclusively presumed to have been settled, and which we hold was settled by the orders of the probate court of Dallas County. The formal legal sufficiency of these orders is not under attack. The claim upon its face was not void, and no facts appear or were offered in evidence that made same void. At most the defense as presented here under this record relates to questions that should be raised either in a direct proceeding provided for in such cases by statute, or in a suit by the ward against his guardian. They are denominated "fraud," but amount only to a collateral attack on the judgments of a probate court as we view the matters.

Authorities which we think support our reasoning and our final conclusion are the following: United States Mortgage Co. v. Sperry, 138 U. S. 313, 34 L. Ed. 969, 11 Sup. Ct. 321; 25 Tex. Jur., p. 678 et seq., Secs. 250, 253, 258; Reeves v. Fuqua, 184 S. W. 682; Murchison v. White, 54 Texas 78; Gillenwater v. Scott, 62 Texas 670; Alexander v. Maverick, 18 Texas 179, 67 Am. Dec. 693; Guilford v. Love, 49 Texas 715; Weems v. Masterson, 80 Texas 45, 15 S. W. 590; Sloan v. Woods, 25 S. W. (2d) 309; Schaeffer v. Williams, 208 S. W. 220 (error refused).

The record before us shows that authority was given to the guardian to mortgage his ward's one-half interest in real estate to secure a loan of $2,500.00 drawing 6% interest per annum. The Court of Civil Appeals held that: "Appellant is not personally liable for the payment of the note, except to the extent of the value of his inheritance chargeable with the payment of the debts, and then, only to the amount authorized to be made and confirmed by the probate court."

This holding is not here questioned by any assignment of error, or otherwise, and will be affirmed, but in all other respects said judgment will be reversed. The trial court's judgment will be reversed as to the item just mentioned and rendered in ac-

cordance with the holding of said Court of Civil Appeals, and affirmed in all other respects.

Trial court's judgment affirmed in part and reversed and rendered in part, and that of the Court of Civil Appeals affirmed in part and in part reversed.

Costs up to and including Court of Civil Appeals taxed against plaintiff in error and costs in this Court taxed against defendant in error.

Opinion adopted by the Supreme Court November 24, 1937.

### ON MOTION FOR REHEARING.

We have concluded that the condition of this record is such as to make it inadvisable to here render and enter judgment in any amount. Accordingly, the judgment of the trial court and that of the Court of Civil Appeals are both reversed, and the cause remanded to the trial court with instructions to enter judgment according to the holding of the original opinion.

Except as indicated, the motion for rehearing is overruled.

Opinion adopted by the Supreme Court January 19, 1938.