**DALLAS SERVICES FOR VISUALLY IMPAIRED CHILDREN, INC., Appellant,**

v.

**BROADMOOR II, Appellee.**

No. 20946.

Court of Appeals of Texas, Dallas.

April 22, 1982.

Rehearing Denied June 17, 1982.

George C. Lamb, III, Rain, Harrell, Emery, Young & Doke, Dallas, for appellant.

Hubert A. Crouch, III, W. Edwards Watts, II, Gardere & Wynne, Dallas, for appellee.

Before GUITTARD, C. J., and WHITHAM and GUILLOT, JJ.

GUITTARD, Chief Justice.

Dallas Services for Visually Impaired Children, Inc., sued Broadmoor II for a judgment declaring that upon the deaths of Jesse L. Harris and Emma Alice Kramer, life tenants and independent executors under the will of Edgar Dugas, Dallas Services would be entitled to title to and possession of certain real property in the possession of Broadmoor. The trial court granted Broadmoor's motion for summary judgment on the ground that all interest of the estate passed by a deed from the executors. Dallas Services contends that the executors were not properly appointed because the Attorney General was not a party to the probate proceedings. It also contends that issues of material fact are raised as to both the existence of an illegality in Broadmoor's title and Broadmoor's notice of the illegality. We hold that the Attorney General's joinder was not required and that no fact issue is raised because, as a matter of law, Broadmoor is a bona fide purchaser whose rights are protected by section 188 of the Texas Probate Code. Accordingly, we affirm.

The controversy concerns property formerly owned by Edgar Dugas, who died on March 7, 1965. In his will, Dugas devised the property to Harris and Kramer for their lives, with a remainder interest to Dallas Services. The will names Harris and Kramer joint independent executors and gives them full power and authority to sell any part or parts of the estate and pass title "should it become necessary for the preservation of my estate." The will also confers upon the executors, whether or not the estate should become indebted to any person, the same rights and powers to control, manage, and dispose of the estate, that would be given a trustee under the provisions of the Texas Trust Act. The will was admitted to probate May 10, 1965, and letters testamentary were issued to Harris and Kramer.

On or about December 11, 1968, Harris and Kramer, signing once "individually" and again as "independent executors," executed a deed purporting to convey fee simple title to the property to Robert L. DeWitty and C. W. Asberry. Ten years later, on or about November 13, 1978, Broadmoor purchased the property from parties claiming through DeWitty and Asberry. Approximately three years after Broadmoor purchased the property, Dallas Services filed the present suit seeking to establish that Broadmoor possesses only a life estate for the lives of Harris and Kramer, rather than fee simple title.

### 1. Appointment of Executors

Dallas Services attacks the executors' deed on the ground that the appointment of the executors is void because the Attorney General was not made a party and served with process in the proceeding to probate the will.[1] It relies on section 2 of Texas Laws 1959, p. 203, ch. 115, § 1,[2] which provides that the Attorney General is a necessary party to any suit "[t]o construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust." Dallas Services argues that the probate proceeding in which the executors were appointed "obviously involved the construction of a testamentary instrument creating or affecting a gift for charitable purposes."

■ We do not agree. It is not necessary to construe a will to admit it to probate and appoint an executor. The distinction between a proceeding for probate and a suit to construe a will is one long recognized in Texas law, as exemplified by decisions holding that in a probate proceeding it is not the province of the court to construe the will for the purpose of determining what property passes under it because, if the document is properly proved to be a will, it should be probated, leaving questions of construction for determination in an independent action. *Langehennig v. Hohmann*, 139 Tex. 452, 163 S.W.2d 402, 405 (1942); *Robinson v. Compton*, 313 S.W.2d 550, 552 (Tex.Civ.App.—Eastland 1958, no writ).

This distinction is recognized by the language of the statute itself, since the only provision directly referring to probate proceedings is subdivision (d), which requires joinder of the Attorney General in proceedings "to contest the probate of any alleged will through which money or property is given for charitable purposes." This provision would be superfluous if subdivision (c) were construed to require joinder of the Attorney General in any proceeding to probate a will providing a charitable gift or trust, whether contested or not. Consequently, we hold that joinder of the Attorney General is not required.[3]

1. We are not sure that Dallas Services has standing to raise this question because its claim to the property appears to rest on the same order, which it now attacks, probating the will and appointing the executors.

2. This statute has since been amended in respects not material here and is codified in article 4412a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982).

3. Dallas Services calls our attention to the recent amendment to this statute, which now requires joinder of the Attorney General in any proceeding "[t]o determine matters incident to the probate and administration of an estate involving a charitable trust." Tex.Rev.Civ. Stat.Ann. art. 4412a(2)(a)(6) (Vernon Supp.

### 2. Authority of Executors

Dallas Services attacks the authority of the executors to sell the property on the ground that the will authorizes them to sell land only "should it become necessary for the preservation of my estate." In this connection, Dallas Services asserts that various circumstances existed which were sufficient to excite inquiry and put the purchasers on notice of the executors' lack of authority. This attack is untenable for several reasons.

 (1) The executors had authority to sell property apart from any express authority in the will, because of outstanding debts of the estate. An independent executor has authority, without an order of the probate court, to do any act which any ordinary executor or administrator may do under such an order. *Rowland v. Moore*, 141 Tex. 469, 174 S.W.2d 248, 250 (1943); *Carleton v. Goebler*, 94 Tex. 93, 58 S.W. 829, 830 (1900). Accordingly, the existence of debts against the estate is sufficient to authorize the independent executor to make a sale, and the purchaser from the executor need not inquire as to whether the proceeds of the property were actually applied to the debts. *Blanton v. Mayes*, 72 Tex. 417, 10 S.W. 452, 454 (1889); *Masterson v. Wingate*, 151 S.W.2d 956, 959 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.). In the present case the inventory filed by the executors shows a total of $32,173.38 in claims against the estate, of which all but $500 was secured by deeds of trust on real estate. The inventory also lists taxes of $914.36 and funeral expenses of $1,277.86. The real estate was appraised at $65,000, and the personal property at $600. There is no evidence that any of these debts had been paid at the time of the sale to DeWitty and Asberry on December 11, 1968, but the parties stipulated that Harris and Kramer paid the taxes and other maintenance expenses with their own funds and became personally liable to pay the indebtedness secured by the property. Thus we may assume that a

part of this indebtedness was still outstanding. Harris and Kramer's assumption of the indebtedness would not extinguish their power of sale as executors because it would not have extinguished the lienholders' rights of foreclosure under their respective deeds of trust. Since title to the estate's entire interest in the property, including any remainder interest, would have passed by a foreclosure sale, a voluntary sale by the executors for the purpose of paying debts would also have passed title. *Clemmons v. McDowell*, 12 S.W.2d 955, 956 (Tex. Comm'n App. 1929, judgmt. adopted).

 (2) The executors had further authority to make the sale under that provision of the will which gives them, in addition to their powers as executors, the same rights and powers "to the control, management and disposition of my Estate that I would give unto Trustees under the provisions of the Texas Trust Act." Section 25 of that Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–25(B) & (G) (Vernon 1960), authorizes trustees, in the absence of contrary or limiting provisions in the instrument creating the trust, "to sell real or personal property at public auction or at private sale," and also "to execute and deliver any deed or other instrument . . . necessary, desirable or advisable" for carrying out any of the other powers specified. By such reference to the Trust Act, the testator evidently intended to confer on the executors broad powers concerning the management of his estate, including authority to sell real estate on such terms as the executors might consider advisable, whether or not such a sale was strictly necessary for the payment of debts.

 (3) Whether the sale to DeWitty and Asberry was "necessary for the preservation of my estate," as provided by the express power of sale in the will, was a matter to be determined by the executors. Neither DeWitty and Asberry, as purchasers from the executors, nor Broadmoor, as subsequent purchasers claiming under

1982). We express no opinion on the meaning of this amendment because it was not in effect

at the time of the order in question here.

DeWitty and Asberry, were required to inquire into the necessity of the sale. The testator entrusted the management of the estate to the executors, presumably because of his confidence that they would carry out his wishes. Since he gave them this power to act independently of the probate court, he evidently intended that their acts have the same effect as those of ordinary executors acting under orders of the probate court. A purchaser from an ordinary executor or administrator is charged with notice of the application and the court's order of sale, but not with notice of underlying reports that might indicate the invalidity of the court's order; otherwise, if the purchaser were required to determine these matters at his peril, the effectiveness of the administration for the purpose of paying debts would be seriously impaired. *McNally v. Haynes*, 59 Tex. 583, 586–87 (1883). Likewise, a purchaser in good faith from a community administrator, who has powers similar to those of an independent executor, need not look beyond the instruments in his claim of title and, after a lapse of years, will be protected by a presumption of the existence of debts justifying the sale. *Clemmons v. McDowell*, 5 S.W.2d 224, 228–29 (Tex.Civ.App.—Amarillo 1927), *aff'd*, 12 S.W.2d 955 (Tex. Comm'n App. 1929, judgmt adopted). In the light of these principles, we hold that a remote purchaser in good faith, such as Broadmoor, may rely on the apparent regularity of the probate proceedings and the apparent authority of a duly qualified independent executor in selling the property of the estate and need not inquire into matters outside the record that might affect the executor's authority.

■■■■■ (4) This principle is embodied in article 188 of the Texas Probate Code (Vernon 1980), as follows:

> When an executor or administrator, legally qualified as such, has performed any acts as such executor or administrator in conformity with his authority and the law, such acts shall continue to be valid to all intents and purposes, so far as regards the rights of innocent purchasers of any of the property of the estate from

such executor or administrator, for a valuable consideration, in good faith, and without notice of any illegality in the title to the same, notwithstanding such acts or the authority under which they were performed may afterward be set aside, annulled, and declared invalid.

We interpret this statute to mean that so long as executors have legally qualified and their acts appear from the record to be in conformity with the provisions of the will and the powers which executors have under the law, their acts will be regarded as valid so far as concerns the rights of innocent purchasers for value and subsequent purchasers from them. Such purchasers, therefore, will be protected against any attack on their title based on a claim of invalidity of the acts of the executors on which their title is based. So interpreted, the statute protects Broadmoor, as an innocent purchaser, from any claim that the authority of the executors to sell the property was not exercised in accordance with their authority under the will or under the law.

### 3. Closing of Administration

Dallas Services attacks the authority of the executors to sell the property to DeWitty and Asberry on the ground that at the time of the sale, the executors had already closed the administration by making a complete distribution of the estate. It argues that the executors had possession of the property only as life tenants because, according to the stipulated facts, more than three years had elapsed after the death of the testator, the life tenants had paid all taxes and maintenance expenses with their personal funds, and they had personally assumed liability on the outstanding mortgage. These circumstances, insists Dallas Services, raises at least a fact issue precluding summary judgment. Dallas Services does not contend that either DeWitty and Asberry or Broadmoor had actual notice of these circumstances, but rather that they were charged with notice of all facts pertinent to the authority of the executors to sell the property.

We do not agree. The same reasoning supporting our holding with respect to the existence of debts and the necessity of the sale applies to expiration of the executors' powers by the closing of the estate. This is not a fact which a remote purchaser, such as Broadmoor, should be required to determine at its peril. An independent executor has authority to determine for himself when the estate is ready for distribution. *Anderson v. Huie*, 266 S.W.2d 410, 412 (Tex.Civ.App.—Dallas 1954, no writ); *Redditt v. Quinn*, 215 S.W.2d 367, 369 (Tex.Civ.App.—Eastland 1948, no writ). The fact that he may have actually delivered the property to the beneficiary does not necessarily divest him of continuing power to administer the estate. *Atlantic Insurance Co. v. Fulfs*, 417 S.W.2d 302, 306 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.). So long as the estate has not been formally closed by an affidavit of the executor in accordance with section 151 of the Texas Probate Code (Vernon 1980), or by an order of the probate court in accordance with section 152 of the Code, the purchaser is entitled to rely on the recitals in the deed that the executors are acting as independent executors.

We may look for guidance here to authorities concerning expiration of the authority of ordinary executors or administrators, in view of the cases already cited holding that the acts of an independent executor must be given the same effect as those of an ordinary administrator acting under orders of the probate court. In an early case the supreme court held that even though the term of an administratrix had expired before the order of the probate court authorizing the sale in question, that fact was immaterial to the title of the purchaser, since the administratrix continued to act as such and her power to do so was recognized by the order of the court. The supreme court held that the purchaser was not required to look further than to see that the administratrix was acting with the sanction of a court of competent jurisdiction to grant or revoke her authority. *Poor v. Boyce*, 12 Tex. 440, 449–51 (1854).

On the same principle, when an independent executor is authorized by the will to act independently of the orders of the probate court and has properly qualified under a will duly probated, a purchaser need make no further inquiry concerning the executor's authority to act on behalf of the estate, but may rely on the executor's having determined for himself whether the estate has been fully administered and closed. Consequently, Broadmoor, when it purchased the property ten years later, was not bound to inquire whether Harris and Kramer, before making the sale to DeWitty and Asberry, had finally distributed all property of the estate to themselves as life tenants and thus had terminated their authority to act on behalf of the estate.

For the reasons stated, we hold that the trial court was correct in holding that no genuine issue of material fact existed and that Broadmoor was entitled to judgment as a matter of law.

Affirmed.