Harriet L. **LESIKAR**, Appellant,

v.

Jenny Lou **RAPPEPORT**, et al., Appellees.

No. 6-90-020-CV.

Court of Appeals of Texas, Texarkana.

Jan. 23, 1991.

Rehearing Granted in Part and Overruled in Part with Opinion March 5, 1991.

248

Frank Gilstrap, Hill, Heard, Gilstrap, Goetz & Moorhead, Arlington, for appellant.

Jerry S. Harris, Harbour, Kenley, Boyland, Smith & Harris, Longview, for Jenny Lou Rappeport.

Rex A. Nichols, Longview, for Faye L. Jeter.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Mrs. Harriet Lesikar appeals from an adverse judgment in her suit seeking distribution of the Harry Lewis, Jr. estate. The district court found there was a need for continued administration, and that a partial distribution of the estate assets should not

be made. We will reverse and remand on the partial distribution issue.

Harry G. Lewis, Jr., died in 1980. He was survived by a widow and two daughters. The younger daughter, Mrs. Lesikar, is the appellant in this suit; the older daughter, Mrs. Rappeport, and the widow, Faye Lewis, are the appellees.

Harry Lewis' will named his two daughters as joint independent executrices and directed them to pay the debts and taxes. The will made specific bequests to Mrs. Faye Lewis and to several persons who worked for Mr. Lewis. It then left each of the two daughters a life estate in an undivided one half of the residue. On a daughter's death, the interest devised to her for life passes to her children in fee simple. *See In re Estate of Lewis*, 749 S.W.2d 927 (Tex.App.—Texarkana 1988, writ denied).

About half of the estate consisted of working interests and royalties in over sixty oil and gas properties. The rest consisted of cash, stocks, bonds, cattle, and real estate, including an undivided twelve and a half percent interest in a Burnett County ranch and an interest in a Harrison County farm.

Both Mrs. Lesikar and Mrs. Rappeport qualified as co-independent executrices of the estate, but Mrs. Rappeport undertook the day-to-day administration of the estate and has continued to keep the estate open for the past ten years.

In 1986, after the estate had been in administration for more than six years, Mrs. Lesikar filed suit to compel distribution. Mrs. Rappeport counterclaimed seeking declaratory judgment that Mr. Lewis's will prohibits distribution while either she or Mrs. Lesikar is alive. The district court so ruled in a summary judgment, and also concluded as a matter of law that there was a continuing need for administration. The judgment was appealed to this Court. In the appeal Mrs. Rappeport sought to uphold the summary judgment on the basis that the will's residuary clause actually created a testamentary trust which prohibited any distribution during the trust's existence. This Court ruled that the will did not create a testamentary trust, but only

devised life estates to Mrs. Lesikar and Mrs. Rappeport. We also held that a continued need for administration had not been conclusively established. The case was thus remanded to determine whether a continuing need for administration existed. On remand, a jury found that there was a need for continued administration, and also that a partial distribution could not be made without committing waste or injuring creditors.

■ In this appeal, Mrs. Lesikar does not challenge the jury finding that there is a continuing need for administration, but she does contend that the evidence does not support the finding that a partial distribution cannot be made without committing waste or injuring creditors. Mrs. Rappeport argues that this contention is in effect a no evidence point and thus must be reviewed according to the standard set out in *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965). We disagree. Since Mrs. Lesikar is attacking the adverse finding to an issue on which she had the burden of proof, we review the point as if she is asserting that she established as a matter of law that a partial distribution should be made. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989). Therefore, we will first search the record for evidence that supports the jury's finding, disregarding all contrary evidence. If there is no evidence to support the jury's answer, then we will examine the entire record to see if the contrary position is established as a matter of law. *Sterner v. Marathon Oil Co., supra; Holley v. Watts*, 629 S.W.2d 694 (Tex.1982).

■ Unless there is a continuing need for administration, the legatees and devisees in a will are entitled to have their property distributed to them, and an independent representative has no right to withhold their property from them by prolonged administration with its attendant fees and expenses. *In re Estate of Lewis, supra; Matter of Estate of Minnick*, 653 S.W.2d 503 (Tex.App.—Amarillo 1983, no writ); *Oldham v. Keaton*, 597 S.W.2d 938 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); Tex.Prob.Code Ann. § 149B (Vernon 1980 & Supp.1991). Even if there is a

continued need for administration, the court must order the distribution of "any portion of the estate that the court finds should not be subject to further administration by the independent executor." TEX. PROB.CODE ANN. § 149B.

The district court refused to order a partial distribution here because the jury found, in answer to question number two, that such a distribution could not be made without injury to creditors or waste against Mr. Lewis' grandchildren, who are the remaindermen under the life estates devised to Mrs. Lesikar and Mrs. Rappeport. From our examination of the evidence and the record, we conclude that the contrary of the jury answer was established as a matter of law.

Mrs. Rappeport's position in this suit seems to be that distributing the estate's assets to the devisees and legatees would constitute waste, and that only the estate's cash should be considered in determining whether a partial distribution can be made without injuring the creditors. Both of these propositions are incorrect.

■ Waste is injury to the reversionary interest in land caused by the wrongful act of one lawfully in possession. Waste exists only when the one in possession destroys or permanently damages the land, which causes a loss to the persons who subsequently may be entitled to the land. *R.C. Bowen Estate v. Continental Trailways, Inc.*, 152 Tex. 260, 256 S.W.2d 71 (1953); *Erickson v. Rocco*, 433 S.W.2d 746 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Pasulka v. Koob*, 170 Ill.App.3d 191, 121 Ill.Dec. 179, 524 N.E.2d 1227 (1988). Delivering the devisee's property to her, free from control of the estate's representative, is not waste; indeed, it often is a way to prevent waste at the hands of the representative. *See Oldham v. Keaton, supra*, at 942, and cases there cited.

■ The fact that the devisee's interest is a life estate does not change this rule. Of course, the *life tenant* might commit waste if, after receiving the property, she wrongfully uses it or invades its corpus, but that is a matter between the

life tenant and the remaindermen. It is not waste for the estate representative to deliver the life estate to the devisee. Nor does the delivery of a life estate to its rightful owner under the will amount to an invasion of the corpus. *In re Estate of Lewis, supra*. It is merely the delivery of the corpus to the person who lawfully has the right to possess it.

■ The fact that some of the oil interests are subject to joint operating agreements and require some management is no impediment to distribution. The life tenants can execute proper documents providing for the operation and management of the properties. That operation, with the life tenants receiving either corpus or income, depending on the application of the open mine doctrine, will not constitute waste. *See McGill v. Johnson*, 799 S.W.2d 673 (1990).

Thus, the evidence conclusively demonstrates that a partial distribution can be made without committing waste.

■ For purposes of determining if the estate assets are sufficient to pay creditors, the value of the entire estate, not just the cash, is to be considered. *Pearce v. Stokes*, 155 Tex. 564, 291 S.W.2d 309 (1956); TEX.PROB.CODE ANN. § 37 (Vernon Supp.1991); 29 TEX.JUR.3D *Decedents' Estates* § 272 (1983).

■ Pursuant to TEX.PROB.CODE ANN. § 149A (Vernon 1980) and the direction in our previous opinion, each party filed an accounting in this proceeding. Mrs. Lesikar's schedule shows the estate's total value to be $2,002,667.37, with debts of $450,-153.18, for a net value of $1,545,514.19. Mrs. Rappeport's accounting shows a total value of $2,821,361.37, with debts of $1,559,740.56. Her debt figure, however, includes $1,102,587.38 in undistributed income to the legatees. Those sums are not estate debts, but bequests subject to distribution. The greatest amount of debt that either side asserted for the estate at the time of the accounting, then, is $457,153.18. Of course, the estate's financial situation has changed from the date of the account-

ings to the date of trial, but it is obvious from the undisputed evidence that the estate assets far exceed the remaining debts.

■ There appears to be more than sufficient cash on hand to pay or guarantee the payment of the remaining debts. Evidence shows that the estate now has between $800,000.00 and $1,000,000.00 cash on hand. In this connection, however, we note that cash is not the only asset available for the payment of debts. All of the estate property, real and personal, is liable for the decedent's debts, if necessary, and this is regardless of any contrary direction which may be in the will. *Dallas Joint Stock Land Bank of Dallas v. Forsyth*, 130 Tex. 563, 109 S.W.2d 1046 (Tex. Comm'n App.1937, opinion adopted); 29 Tex.Jur.3d *Decedents' Estates* § 471 (1983). Moreover, an independent representative is allowed, indeed is required, to sell so much of the estate property, real or personal, as may be necessary to pay debts. *Rowland v. Moore*, 141 Tex. 469, 174 S.W.2d 248 (1943); *Fortune v. Killebrew*, 70 Tex. 437, 7 S.W. 759 (1888); *Dallas Services, Etc. v. Broadmoor II*, 635 S.W.2d 572 (Tex.App.— Dallas 1982, writ ref'd n.r.e.); 29 Tex. Jur.3d *Decedents' Estates* § 767 (1983), and cases there cited; 17 M. Woodward & E. Smith, Probate and Decedents' Estates § 495, at 400, § 499, at 408–09 (Texas Practice 1971). And, an estate representative may not indefinitely prolong administration simply by delaying the payment of debts when there are sufficient assets to pay them. Thus, the undisputed evidence also shows that a partial distribution may be made without injury to the creditors.

■ Mrs. Lesikar also contends that the district court erred in deducting $26,000.00 from the income distribution to which she is entitled because there is no evidence, or alternatively insufficient evidence, to support such a deduction. We will first examine the record for any probative evidence to support the finding, ignoring contrary evidence. *Garza v. Alviar, supra*. If we find some probative evidence, we will test the factual sufficiency of it by examining the entire record to determine whether the finding is manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In answering special issue number ten, the jury found that the undistributed income due Mrs. Lesikar should be reduced by $100,000.00 for debts or obligations owed to the estate. The district court reduced and remitted this figure to $26,-000.00 in order to conform to the evidence.

In 1989, Mrs. Rappeport sent Mrs. Lesikar a check in the amount of $212,561.94 for accrued undistributed income. She deducted $25,268.01 for "accounts receivable." In her letter to Mrs. Lesikar, Mrs. Rappeport stated:

> The money due by you from three (3) properties (J & L Ranch, C.B. Moore and Muslow) have been deducted as per statements previously sent. Your refusal to pay these bills has cost the person or entity who advanced those funds on your behalf more than 7.25% per annum as you can imagine. However, only a one year interest charge has been made.

Mrs. Lesikar refused the check.

Rosie Gill, the estate's bookkeeper for the last eight years, testified that according to her records Mrs. Lesikar owed the estate $16,737.42 for production costs on the oil and gas leases and $9,570.00 for the J & L Ranch operating expenses. Mrs. Gill further testified that these same expenses were incurred and paid by Mrs. Rappeport. This evidence supports a conclusion that Mrs. Lesikar was obligated to the estate for debts paid by the estate on her behalf and that the amount of undistributed income due her should be reduced by that amount.

Mrs. Lesikar also complains of the jury's failure to find any attorney's fees were incurred by her and by its award of attorney's fees to Mrs. Rappeport.

In view of our disposition of this appeal, the award of attorney's fees to Mrs. Rappeport should be reconsidered by the district court in the light of the changed result.

■ There was specific evidence as to Mrs. Lesikar's reasonable attorney's fees. Two attorneys testified that they spent 487 hours and 113 hours respectively on the case at $150.00 per hour, and that such

services, hours and rates were reasonable and necessary. There was no contrary evidence. We thus find that the jury's answer of zero to the question of Mrs. Lesikar's attorney's fees is against the great weight and preponderance of the evidence.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded to the district court to order a partial distribution of such portions of the estate that should not be subject to further administration by the independent executrices, as provided by TEX.PROB.CODE ANN. § 149B, and to retry the issue of attorney's fees.

## ON MOTION FOR REHEARING

In her motion for rehearing, Mrs. Rappeport contends, among other things, that we erred in reversing that portion of the judgment which awarded her attorney's fees. She argues that the award was proper under TEX.PROB.CODE ANN. § 149C(c) (Vernon 1980), and alternatively that Mrs. Lesikar did not raise on appeal any contention that the award was improper.

■ Section 149C(c) of the Texas Probate Code provides that:

An independent executor who defends an action for his removal in good faith, whether successful or not, *shall* be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings.

(Emphasis added.)

The trial court, in accordance with the jury findings, found that Mrs. Rappeport had defended in good faith the action to remove her as an independent executrix, and that she did not breach her fiduciary duty to the other beneficiaries of the estate. Thus, whether she was successful or not on the appeal, she would be entitled to attorney's fees pursuant to Section 149C(c).

Mrs. Rappeport originally pleaded for attorney's fees under the Declaratory Judgment Act, but not under Probate Code, Section 149C(c). She did file a trial amendment seeking attorney's fees under Section 149C(c), but it purported to amend her third answer and counterclaim rather than her fourth answer and counterclaim, on which she actually went to trial. The following colloquy occurred when Mrs. Rappeport requested leave to file her trial amendment.

THE COURT: This is different. I'm telling you that in a suit of this kind it's no surprise to anybody. It's nothing that you would have to change tactics about. They're in the statute, 149C, and if you're successful in removing this executrix, I'm going to award you attorney's fees; otherwise, I am not. If she is successful in defending this charge and is not removed, then I'm going to award her attorney's fees, reasonable and necessary attorney's fees. Nobody in this room is surprised by that. You couldn't have ever read 149C and be surprised by that. So, if it requires somebody to sit down right and on a yellow legal pad to write out whatever pleading is necessary to accomplish that, do it right now so that there can be no objection to the—to evidence about attorney's fees on the basis of pleadings. Now, is that necessary, Mr. Ross?

MR. ROSS: It's not necessary, if the Court will just allow me to make a running objection, but if you're going to allow a trial amendment or something like that—

THE COURT: Technically, you would be correct. If it weren't written out right now and filed right, you would technically be correct that this is not supported by the pleadings, and I don't want that technicality in my record. That's why we're going to take thirty minutes and let somebody write it out. Then you can make your objection if you want to.

Nobody should be surprised in any way about what 149C says about attorneys (sic) fees and I will allow it. Does anybody wish to have a trial amendment?

MR. HARRIS: Yes, Your Honor, Defendant, Jenny Rappeport, moves for a trial amendment.

THE COURT: All right. Would you draft your amendment and hand it to the clerk for filing.

All right. Has the amended pleading been filed?

MR. HOWARD: It is in the process of being filed at this time, and the amendment is reflected by the yellow sheet contained within the copy.

MR. ROSS: Is that what it is? Is this the only thing you're filing?

MR. HOWARD: There is another paragraph regarding attorney's fees pursuant to the declaratory judgment on the condition that it's—

THE REPORTER: I can't hear you.

MR. HOWARD: The answer in line with the Court's ruling to allow attorney's fees, specifically under Section 149C of the Probate Code.

■ The purpose of pleadings in our system is to give fair notice that a claim is being made. Certainly, notice was afforded in this instance, as the court and all parties were fully apprised that Mrs. Rappeport was seeking attorney's fees under Section 149C(c), and she was granted permission to amend her pleadings to expressly so state. The fact that her trial amendment was ineffective as it was actually filed does not change the fact that the issue was tried with notice and by consent. Thus, formal pleading of the matter was unnecessary. TEX.R.CIV.P. 67; *see also Jess v. Libson*, 742 S.W.2d 90 (Tex.App.—Austin 1987, no writ); *McClendon v. Farmers Texas County Mutual Ins. Co.*, 682 S.W.2d 722 (Tex.App.—Fort Worth 1985, no writ).

■ Mrs. Rappeport also complains because we taxed all costs on appeal to her individually. In this she is partly correct. As a co-independent executrix defending an action involving benefits to the estate, she is entitled to have her costs paid by the estate. TEX.PROB.CODE ANN. § 149C(c); 29 TEX.JUR.3D *Decedents' Estates* § 570 (1983), and cases there cited. Her argument that at least part of the costs should be assessed against Mrs. Lesikar is overruled. As the issues on appeal were principally decided in favor of Mrs. Lesikar, we con-

clude that no part of the costs on appeal should be taxed against her. *See* TEX.R. APP.P. 89.

For the reasons stated, the motion for rehearing is granted in part, so that the portion of the judgment below awarding attorney's fees to Mrs. Rappeport is affirmed. In all other respects, the judgment is reversed and the cause is remanded to the district court to order a partial distribution of such portions of the estate that should not be subject to further administration by the independent executrices, as provided by TEX.PROB.CODE ANN. § 149B (Vernon 1980 & Supp.1991), and to retry the issue of Mrs. Lesikar's attorney's fees. Costs on appeal are taxed against Mrs. Rappeport in her capacity as co-independent executrix of the estate.